Opinion of the Court by
Judge Owsley.
On the 22d of October, 1822, Richard Ramsey and Jesse Donoho, by a writing sealed and delivered, bound themselves to pay John Broaddus four hundred dollars, in current money, on or before the 25th day of December, 1823.
The obligation was afterwards assigned by Broaddus to William and Samuel Stone, who brought suit thereon, and recovered judgment at law against Ramsey and Donoho.
Ramsey then exhibited bis bill in equity,, with injunction against the Stones and Broaddus, in which the charges that "the obligation was executed by him, and Donoho as his security, for the price of a waggon and horses, purchased by him of Broaddus, and that the price was agreed to be paid in paper, of the Bank of the Commonwealth, but through fraud or mistake, the obligation was drawn for current money.
As to the consideration.
Answers.
Decree of the circuit court.
Equity will not give compensation for the fraud in the sale of personal property held on to by the purchaser, where there is remedy at law—But in a proper case, will cancel the contract.
The bill also alleges unsoundness in some of the horses, at the time of the purchase; and charges Broaddus with fraudulently concealing the unsoundness, and misrepresenting the same to Ramsey.
The Stones and Broaddus each answered; the former professing to know nothing of the contract between the latter and Ramsey, and putting Ramsey upon the proof of the allegations contained in in his bill, and the latter expressly denying ail the matters of equity set up, and requiring proof thereof.
The court below was not of opinion that Ramsey was entitled to relief on the ground of fraud in relation to the unsoundness of the horses, but was of opinion, that by the contract between the parties, the price of the waggon and horses was to be paid in paper of the Bank of the Commonwealth, and decreed a perpetual injunction against the judgment at law, for two hundred dollars and interest, it being proved that one dollar in silver, at the time the obligation became payable, was worth two dollars of the paper of the bank.
The court was no doubt correct in supposing that Ramsey was not entitled to relief, upon the score of the alleged unsoundness of the horses. The evidence is by no means satisfactory to prove that any fraud was committed by Broaddus, in either concealing or misrepresenting any defect or unsoundness of either of the horses. But were the evidence upon that subject conclusive as to the commission of an actual fraud by Broaddus, still it would have been necessary, before relief could be decreed by a court of equity, that Ramsey should appear to have abandoned the contract recently after discovering the fraud, and offered to restore the property purchased, and not as he seems to have done, kept the properly, and applied it to his own use and benefit. Though there may have been no offer by Ramsey to restore the property, he ought, undoubtedly to have redress, if in point of fact, fraud was practised upon him, in the sale by Broaddus, but he should in that case seek redress in the ordinary course of law. *238 and not have applied to a court of equity whose province, is not to take cognizance of questions of fraud for the purpose of estimating the injury done, and decreeing a compensation, but for the purpose of cancelling, the contract, and placing the parties in statu quo
In reducing a contract to writing, the parties agree to abide by that as the most certain evidence.
Fraud or mistake in writing a contract may be proved by extraneous evidence.
Subscribing witness—his testimony prefered.
But with respect to the ground upon which the court denied relief to Ramsey, we differ essentially from that court.
By reducing their contract to writing, the parties, have mutually substituted the most certain, permanent and best evidence of their agreement, and they must be understood thereby to have agreed to abide by that superior evidence, in preference to the uncertain and frail recollection of witnesses. Adverting to the writing, therefore, as the true, expositor of the contract, it is perfectly clear that the price which Ramsey contracted to pay for the waggon, and horses, was four hundred dollars in current money, and not in paper of the. Bank of the Commonwealth.
We have not forgotten that it is. charged by Ramsey in his bill, that the writing was draw’ll as it is,, through fraud or mistake," and whether it was so drawn or not, we admit, is a qustion of fact, which from its nature must necessarily depend upon extraneous evidence. But we are not of opinion that the record contains sufficient evidence to establish either fraud or mistake, in the drawing of the writing.
There, is to the writing a subscribing witness, who. from the circumstance of bis having been selected by the parties to attest the writing, must be presumed to know more, o! the transaction than any oilier, and whore testimony would, therefore, have been, more satisfactory as to the facts which attended the execution of the writing, than the evidence of a stranger; but instead of taking the deposition of. the subscribing witness, and without assigning any reason for the failure, Ramsey has thought proper-to rest; his case upon the testimony of two other witnesses, neither of whom were present at the execution *239 of the writing, and both of whom state that they know nothing about the contract, except what they have since learned in conversation with Broaddus.
Evidence of the party's confessions, offered to prove the further mistake-
-Held insufficient.
Confessions of the party to be weighed with caution.
One of these witnesses states that the, Was in company with Broaddus, Ramsey and others, after the obligation was given by Ramsey to Broaddus, and when Adam Rogers was about executing a note to Ramsey, at which time a note calling for current money was presented to Rogers, but he refused to sign it, saying that be could write a note that would conform better to their contract Ramsey' remarked that it was the same sort of a note that he had given to Broaddus for the waggon &c. and Broaddus replied that if was written in the same way, and said he would lake no advantage of the manner the note was drawn; but the contract between him and Ramsey was Commonwealth’s paper, and all he wanted was to have the money made as good as it was when they traded. The other witness states that he was present at the time mentioned, and heard Broaddus say that the note, presented to Rogers for his signature, was written like that given to him by Ramsey, but that Broaddus said it should make no difference, he wanted no advantage. The witness further stated that he heard nothing said about specie in the conversation.
This is the only testimony in the cause, conducting in the slightest degree to support the allegations of the bill, arid is, in our opinion, altogether insufficient to warrant the decree of the court below.
The evidence is not only presented to us under the suspicious circumstance of coming from strangers, when there is a subscribing witness to the writing, whose evidence might, from anything contained in the record, have been obtained, but, it moreover consists entirely, in what the witnesses state they have heard Broaddus say since the contract, a species of evidence, which of all others, should be weighed with the greatest caution; and not only so, but whilst the witnesses concur in seating what is sufficient to show that Ramsey must have *240 known the contents of the writing when it was executed there is a discrepancy in their testimony as to some of the statements which they relate to have been made by Broaddus.
Turner, for appellants; Caperton, for appellees.
Evidence if this sort presented under these circumstances cannot be admitted sufficient, in opposition to fix express denial of the answer, to fix upon the defendant. Broaddus the charge of fraud in drawing the writing, and is totally insufficient to establish any thing like a mistake in the parties.
The decree must, consequently, be reversed, with rests, the cause remanded to the court below, and the bill dismissed with costs and damages.